IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHARLES BRETT BOREN | CASE NO. 1:22-CR-00074-MJT |

## **REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

This case is assigned to the Honorable Marcia A. Crone, United States District Judge. Pursuant to Title 28 U.S.C. § 636(b)(1)(B) and Local Rule CR-59, Judge Crone referred Defendant's *Motion to Suppress Evidence* (Doc. No. 20) to the undersigned United States Magistrate Judge for consideration and entry of proposed findings and recommended disposition. Doc. No. 21.

On March 30, 2022, Detective Joseph Steele, working for the Narcotics Division of the City of Orange Police Department ("OPD"), arrested Defendant Charles Boren for possession of a controlled substance after a high-speed vehicle pursuit. Steele maintains that he searched Boren's vehicle after noticing in plain view a plastic bag containing a clear, crystal-like residue ensconced in a black case located on the driver's seat floorboard. The search later revealed four (4) ounces of methamphetamine found in Boren's vehicle. Boren alleges the case was in a closed position, the bag was not in plain view, and that Steele committed a trespass when he reached inside the vehicle to view its contents. Boren now moves to suppress this evidence as an unlawful trespass into Boren's vehicle, in violation of his Fourth Amendment rights.

On January 19, 2023, the court held a hearing regarding the present motion. After reviewing the parties' briefings, as well as Detective Steele's live body camera footage and in-court testimony, the court is of the opinion that Detective Steele saw drug paraphernalia in plain view, and thus had probable cause to seize the case containing the incriminating plastic bag, and then search the vehicle. However, even if drug paraphernalia was not in plain view, OPD's policy of conducting inventory searches of vehicles would have inevitably led to the discovery of the methamphetamine located in the vehicle. Accordingly, the undersigned recommends denying Defendant Charles Boren's *Motion to Suppress Evidence*. Doc. No. 20.

### I.     **Factual and Procedural Background**

A confidential informant provided information to the OPD that Charles Boren was trafficking ounce quantities of methamphetamine in Orange County. Doc. No. 22 at 1; *see also* Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 5:17–24. On March 30, 2022, Detective Steele conducted undercover surveillance of Boren by following his vehicle around Orange County. Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 25:17–26:1. While conducting surveillance, Detective Steele observed Boren drive up to a gas station, located near the freeway entrance of Interstate 10, alongside F.M. 1442. *Id.* at 6:13–19. Boren parked his vehicle at a fuel pump station, and waited inside his car for approximately twenty minutes until a separate vehicle pulled up next to his. *Id.* at 6:22–7:9. At that point, Boren exited his car, walked over to the newly arrived vehicle, conversed with the occupants of that vehicle, and then returned to his car without ever pumping gasoline. *Id.* at 7:9–7:23.

Boren then drove onto F.M. 1442, and approached a stop sign. *Id.* at 10:23–11:4. As he made a right-hand turn onto the Interstate 10 service road, Boren failed to engage his turn signal,[1] and entered the freeway at a high rate of speed. *Id.* at 11:6–24, 13:11–12. As Detective Steele followed Boren's vehicle on Interstate 10, the "governor" device installed on his vehicle prevented him from exceeding a speed of 106 miles per hour, indicating that Boren was driving at a speed exceeding 106 miles per hour. *Id.* at 13:21–14:6. Boren subsequently failed to use his turn signal three (3) additional times after exiting Interstate 10. *Id.* at 16:4–19.

At this point, Steele activated the emergency lights on his undercover vehicle in order to arrest Boren for violating several traffic laws. *Id.* at 16:24–25, 17:23–18:15. Once Boren's vehicle stopped and he exited the vehicle, Boren's e-cigarette vape pen that was resting on his lap fell to the ground. *See* Gov't's Ex. 1, Doc. No. 23 at 0:59–1:12 (Detective Steele's body camera footage). Detective Steele then placed Boren in handcuffs and directed him toward the back of his vehicle. *Id.* at 1:12–1:22.

After Boren headed to the back of his vehicle, Detective Steele noticed Boren's vape pen lying on the ground, picked it up, and tossed it onto the driver seat of Boren's open vehicle. *Id.* at 1:22–1:26. As Steele turned his body to walk away from Boren's car, he noticed a plastic baggie with a clear-like residue located within a "sunglasses case" on the driver's-side floorboard.[2] *Id.* at

---

[1] Texas Transportation Code, Section 545.104 states: "(a) An operator *shall* use the signal authorized by Section 545.106 to indicate an intention to turn, change lanes, or start from a parked position." Tex. Transp. Code § 545.104(a) (emphasis added).

[2] "Drug Paraphernalia" is defined as "equipment, a product, or material that is used or intended for use in planting, propagating, . . . packaging, repackaging, storing, containing, or concealing a controlled substance in violation of this chapter or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter." TEX. HEALTH AND SAFETY CODE § 481.002(17). This definition includes "a capsule, balloon, envelope, or other container used or intended for use in packaging small quantities of a controlled substance," such as a plastic bag containing methamphetamine residue. *Id.* § (17)(I); *see, e.g., Ayala v. State*, No. 05-01-01381-CR, 2002 WL 1917694, at *1 (Tex. App.—Dallas 2002, no pet.) ("Police searched the remainder of the residence and found drug paraphernalia, including . . . nine plastic sandwich bags with marijuana residue in each."); *see also* TEX. HEALTH AND SAFETY CODE § 481.125(a) (an offense to knowingly or intentionally use, or possess with intent to use, "drug paraphernalia to plant, propagate, . . . store, contain, or conceal a controlled substance.").

1:26–29. With only his left hand, Steele reached for the "sunglasses case" located inches away from a prescription pill bottle with a torn label,[3] picked up the case, and then used his right hand to further open it, clarifying that the bag contained a plastic bag with methamphetamine residue located inside. *Id.* at 1:29–32. Steele then announced, "You've got paraphernalia in plain view," and placed the case back on the driver's seat inside Boren's car. *Id.* at 1:32–34. After effecting Boren's arrest, the OPD conducted a search of Boren's vehicle and found four (4) ounces of methamphetamine. *Id.* at 31:23–32:5.

## II. Discussion

In his *Motion to Suppress Evidence*, Boren argues that Detective Steele "took possession of a black case that was in the closed position on the driver's side floorboard. The contents of the case were not exposed until after Officer Steel[e] opened it." Doc. No. 20 at 2 ("The case was not zipped shut but was in the closed position."). Moreover, Boren contends that the black case in question could have been used "for many purposes that are not drug related," such as to store the insulin that Boren uses to manage his Type-1 diabetes. *Id.* Boren therefore urges the court to find that the plain view exception to the Fourth Amendment does not apply, and that by unlawfully trespassing into Boren's vehicle when he reached for the black case, Detective Steele conducted an unlawful search of his car. *Id.* at 3–7.

In its *Response*, the Government disagrees with Boren's representations of the facts. Doc. No. 22. The Government contends that "[t]he case was open, and contained a small plastic baggie inside, that Steele immediately recognized through his training and experience, as containing

---

[3] It is illegal to possess a prescription-only substance without a prescription, and all prescribed medications must meet certain labeling requirements. *See Bernard v. State*, No. 10-16-00215-CR, 2017 WL 4697746, at *5 (Tex. App.—Waco 2017, pet. ref'd) (mem. op., not designated for publication) (internal citations removed) (officer found prescription pill bottle in plain view in defendant's passenger-side door without an apparent prescription label and had probable cause to seize it); *see also* TEX. HEALTH & SAFETY CODE §§ 483.001(2), 483.041; 22 TEX. ADMIN. CODE § 291.33 (prescription pill bottle labeling requirements).

4

methamphetamine residue." *Id.* at 2–3. Therefore, the Government maintains that the plain view doctrine applies in this case, but that alternatively, because the OPD has a policy of conducting inventory searches of an automobile after placing its driver under arrest, the court should apply the inevitable discovery doctrine. Here, the court agrees with the Government regarding both issues.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A warrantless search is presumptively unreasonable unless the Government satisfies its burden, and shows that the search fell within an exception to the warrant requirement, such as the plain view or inevitable discovery doctrines. *United States v. Aguirre*, 664 F.3d 609, 610 (5th Cir. 2011). If the Government fails to satisfy its burden, evidence obtained through an unreasonable search may be suppressed under the exclusionary rule. *See Herring v. United States*, 555 U.S. 135, 139 (2009) (citation omitted) ("Nonetheless, our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial.").

However, "suppression is not an automatic consequence of a Fourth Amendment violation," and the U.S. Supreme Court has characterized exclusion through suppression as an "extreme sanction" that courts should apply sparingly. *Id.* at 137, 141 (citations and internal quotation marks omitted) (warning that application of the exclusionary rule imposes "substantial social costs" that must be outweighed by the rule's benefit of deterrence); *United States v. Leon*, 468 U.S. 897, 926 (1984) (footnote omitted); *see also Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (quoting *Leon*, 468 U.S. at 907) ("Suppression of evidence, however, has always been our last resort, not our first impulse. The exclusionary rule generates 'substantial social costs,' . . . which sometimes including setting the guilty free and the dangerous at large.").

Here, Boren does not dispute the legality of stopping his vehicle for committing several traffic violations. *See United States v. Gladney*, 809 F. App'x 220, 225 (5th Cir. 2020) (quoting *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003)) ("'An officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses.'"). Neither in his motion (Doc. No. 20), nor at the suppression hearing, did Boren contest the legality of the traffic stop or argue that he was unlawfully arrested. *See generally* Doc. No. 20; Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 26:9 (emphasis added) (Counsel for Defendant: "And you said that you made the decision . . . to make an arrest for failing to use a traffic signal . . . And while I'm aware that that's a lawful – *you are allowed under your discretion to make an arrest for that* . . ."); *see, e.g.*, *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (analyzing Texas Transportation Code § 545.413, where neither mother nor children wore seatbelts while driving) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."); *United States v. Williams*, 823 F. App'x 267, 268 (5th Cir. 2020) (citing *Atwater*, 532 U.S. at 354) (officers were justified to effect arrest of defendant where defendant drifted between lanes without signaling); *see also United States v. Molinero Puente*, 778 F. App'x 311, 312 (5th Cir. 2019) (citing TEX. TRANSP. CODE §§ 502/407, 521.021, 521.451) (officers had probable cause "to stop and arrest Molinero Puente in light of his three violations of Texas law—driving with an expired license plate, driving without a valid driver's license, and possession of a 'fictitious' driver's license.").

Accordingly, the only questions remaining are: (1) whether the plastic bag containing methamphetamine residue was in plain view to Detective Steele; and (2) alternatively, whether the OPD would have inevitably discovered the contents of this bag, and the four ounces of

methamphetamine, even if the plain view doctrine did not apply. The court will address each in turn.

### A. Plain View Doctrine

Under the plain view doctrine, "a truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion." *Arizona v. Hicks*, 480 U.S. 321, 328 (1987). Moreover, it is well settled that the seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity. *Payton v. New York*, 445 U.S. 573, 586–87 (1980). The Supreme Court has reasoned that "requiring police to obtain a warrant once they have obtained a first-hand perception of contraband, stolen property or incriminating evidence generally would be a 'needless inconvenience' . . . that might involve danger to the police and public." *Texas v. Brown*, 460 U.S. 730, 739 (1983) (citation omitted). Further, "if, while lawfully engaged in an activity in a particular place, police officers perceive a suspicious object, they may seize it immediately." *Id.* (collecting cases)

Thus, a police officer may seize an item in plain view, without a warrant, if: (1) the police "lawfully entered the area where the items could be plainly viewed; (2) the incriminating nature of the items to be seized was immediately apparent; and (3) the officers had a lawful right of access to the items." *United States v. Myers*, 630 F. App'x 289, 293 (5th Cir. 2015) (internal citation and quotation marks omitted); *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006) (citation omitted).

*i.     Lawful Entrance into Area*

First, Detective Steele lawfully returned Boren's vape pen to the driver's seat of his vehicle. As shown in the body camera footage, when Boren exited his vehicle, the vape pen that was situated on his lap fell onto the ground. Gov't's Ex. 1, Doc. No. 23 at 0:59–1:12; *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)) ("[V]ideo recordings are given a presumption of reliability and significant evidentiary weight because 'an electronic recording will many times produce a more reliable rendition . . . than will the unaided memory of a police agent. . . . our court must view the 'facts in the light depicted by the videotape.'"); *see also United States v. Wright*, No. 21-40849, 2023 WL 240687, at *4 (5th Cir. Jan. 18, 2023) (same). Neither party contests that Detective Steele had a lawful right to pick up Boren's personal property and return it to his driver's seat.

Moreover, "an officer may reapproach a vehicle even after the passenger has exited it and from outside the vehicle look through windows or open doors." *United States v. Newsome*, No. A-12-CR-298-LY(1), 2012 WL 12919540, at *3 (W.D. Tex. Nov. 16, 2012) (citing *United States v. Bynum*, 508 F.3d 1134, 1137 (8th Cir. 2007)); *Carr v. Hoover*, 837 F. App'x 279, 283 (5th Cir. 2020) (citation omitted) (holding that an officer walking next to a truck and peering inside "did not conduct a search, under the meaning of the Fourth Amendment, at all.") *see also Hicks*, 480 U.S. at 325 (citation omitted) (mere inspection of incriminating evidence does not constitute a separate, independent search, because it "produce[s] no additional invasion of [defendant's] privacy interest."); *Brown*, 460 U.S. at 740 (no expectation of privacy to "the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers."); *United States v. Arredondo-Hernandez*, 574 F.2d 1312, 1314 (5th Cir. 1978) ("[T]hat the policeman may have to crane his neck, or bend over, or squat, does not render

8

the [plain view] doctrine inapplicable, so long as what he saw would have been visible to any curious passersby."). Accordingly, the first prong of the plain view doctrine is easily met.

      ii. *Immediately Apparent Incriminating Nature & Lawful Right of Access to the Case*

Next, the court is of the opinion that the plastic bag containing methamphetamine residue was "immediately apparent as incriminating," and that Detective Steele had a lawful right of access to the open case. *Myers*, 630 F. App'x at 293.

"The incriminating nature of an item is immediately apparent if the officers have probable cause to believe that the item is either evidence of a crime or contraband." *United States v. Turner*, 839 F.3d 429, 433 (5th Cir. 2016) (quoting *United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1996)). Probable cause analysis is "commonsense," "does not require certainty," and is viewed from the perspective of "those versed in the field of law enforcement" — thus, it is only necessary that there is a "practical, nontechnical probability that incriminating evidence is involved." *Myers*, 630 F. App'x at 293 (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)); *United States v. Waldrop*, 404 F.3d 365, 369 (5th Cir. 2005) (internal citation and quotation marks omitted); *Turner*, 839 F.3d at 433 (quoting *United States v. Espinoza*, 826 F.2d 317, 319 (5th Cir. 1987)).

Furthermore, when determining the existence of probable cause, the court considers "the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand." *Turner*, 839 F.3d at 433 (internal citation and quotation marks omitted); *see, e.g.*, *Carr*, 837 F. App'x at 283 (officer had probable cause to conduct warrantless arrest after he reasonably, albeit mistakenly, believed he saw large quantities of controlled substances in suspect's vehicle because it was a "dimly-lit early-morning," he "spotted seven boxes of Sudafed together on the truck's consol[e]," and the suspect did not provide a clear explanation for the Sudafed); *United States v. Salinas*, 543 F. App'x 458, 461, 468 (5th Cir. 2013)

9

(officers had probable cause to open and search defendant's duffel bag because their observation of white powder on a table and the floor of an apartment complex, and clothing and a duffel bag with a symbol associated with a violent drug-dealing gang "in their experience, were indicative of drug trafficking"); *compare with United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (no probable cause where officers could not immediately discern that shotgun was "sawed off below the legal size limit and its serial number was obliterated" since "officers could only see the weapon's handle" and did not have probable cause to believe defendant was a felon or that firearm was used in domestic altercation).

Here, the dispositive question is whether the plastic bag was in plain view such that Detective Steele had probable cause to believe it was some form of drug paraphernalia. *Turner*, 839 F.3d at 433; *Myers*, 630 F. App'x at 293. As a preliminary matter, the video evidence shows that the black case was unzipped, and partially open, on the driver's side floorboard of Boren's vehicle. *Wright*, 2023 WL 240687, at *4 (internal citations omitted) ("[V]ideo recordings are given a presumption of reliability and significant evidentiary weight. . . . our court must view the 'facts in the light depicted by the videotape.'").

Moreover, given the greater context of events leading up to Detective Steele's identification of the plastic bag, the totality of the circumstances heavily favor a finding of probable cause. First, given Detective Steele's training, experience, and prior knowledge of Boren's suspected drug trafficking, it is more than likely that Detective Steele would have been able to quickly identify the inside of the case as containing drug paraphernalia. Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 3:25–4:6 (twenty years employment with the Orange Police Department; main role is to investigate narcotics crimes). Next, Detective Steele witnessed Boren engage in suspicious behavior while waiting at the fuel pump for approximately twenty minutes without

pumping any gas into his car, or otherwise exiting his vehicle. *Id.* at 6:22–7:5 (testifying it was "odd" that Boren never left his vehicle while waiting about twenty minutes at fuel pump). Then, Steele witnessed Boren exit his vehicle, walk over to a newly-arrived vehicle, return to his car, and then drive off. *Id.* at 7:6–21. This observation comes after a confidential informant provided him with information that Boren was trafficking methamphetamine. *Id.* at 5:15–24.

More to the point, after returning Boren's vape pen to his vehicle, Detective Steele started to turn away, but then pivoted back toward the interior of the vehicle, as if something significant caught his attention. Gov't's Ex. 1, Doc. No. 23 at 1:26–29. While the body camera footage is not entirely clear to the viewer the exact contents of the black case, it is clear to the court that the case was partially opened, and lying next to a prescription pill bottle. *See id.* Detective Steele testified that from where he was standing outside Boren's vehicle, he "could see down inside the baggie in the case," that "there was residue in the case also," and that his training and experience led him to "immediately recognize" methamphetamine residue in the plastic bag. Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 29:17–21; *see also id.* at 19:20–20:1 (Government's examination of Steele).[4]

Accordingly, when combining Detective Steele's training, education and background with the OPD in the narcotics division, with his observation of Boren's prior suspicious activity at the gas station, that Detective Steele immediately pivoted back to facing the vehicle rather than returning to where Boren was located, that the case was unzipped, that Detective Steele passed over the prescription pill bottle nearby,[5] and that all events occurred in broad daylight, the totality of the circumstances weigh in favor of finding Detective Steele credibly — and correctly —

---

[4] The crime laboratory confirmed that the residue inside the plastic baggie was methamphetamine. Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 24:4–11.
[5] Although not raised by the Government, the prescription pill bottle with the partially torn label in plain view could also have provided a basis for the vehicle search. *See supra*, n.3.

believed he saw drug paraphernalia in plain view. *Turner*, 839 F.3d at 433; *Salinas*, 543 F. App'x at 468.

Lastly, Boren contends that Detective Steele could not have immediately determined that the case contained drug paraphernalia, and believes that because Detective Steele had to use two hands to further open the case, this constituted a *Hicks* violation. *Hicks*, 480 U.S. at 325; *see also United States v. Williams*, No. 1;17-CR-41, 2017 WL 3528955, at *3 (E.D. Tex. July 27, 2017) (citing *Hicks*, 480 U.S. at 325) ("[T]he [ ] search went beyond mere observation when Agent Stinebaugh used a board to search the bottom of the tank because he could not observe with his naked eye anything through the murky water."), *R & R adopted*, No. 1:17-CR-41-MAC, 2017 WL 3529079 (E.D. Tex. Aug. 15, 2017).

The court is not convinced that Detective Steele's actions constituted such a violation. Indeed, after picking up the black case, Detective Steele did use both hands to completely open the case. Gov't's Ex. 1, Doc. No. 23 at 1:30. This action, however, was not "a search separate and apart" from Steele seeing the plastic bag in plain view before picking it up. *Hicks*, 480 U.S. at 324. Once more, "[t]he incriminating nature of an item is immediately apparent if the officers have probable cause to *believe* that the item is either evidence of a crime or contraband." *Turner*, 839 F.3d at 433 (emphasis added) (quoting *Buchanan*, 70 F.3d at 826). Here, the case was unzipped and partially open, well in plain view to either Detective Steele or a passerby, and Detective Steele had probable cause to believe that the inside of the black case contained incriminating evidence. *Brown*, 460 U.S. at 740 ("There is no legitimate expectation of privacy . . . shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers."). That Detective Steele pried the case open with both hands to confirm its contents after-the-fact does not extinguish the original

12

finding of probable cause to initially believe the case contained some form of contraband. Accordingly, the second element of the plain view doctrine is satisfied here.

Finally, Detective Steele was authorized to access the black case, and its contents, once he observed it in connection with the lawful stop of Boren's vehicle. *United States v. Beene*, 818 F.3d 157, 164 (5th Cir. 2016) (citation omitted) ("Under the automobile exception, police may stop and search a vehicle without obtaining a warrant if they have probable cause to believe it contains contraband. . . .The exception is justified by the mobility of vehicles and occupants' reduced expectations of privacy while traveling on public roads."); *see also United States v. Williams*, 18-0229, 2019 WL 1372172, at *3 (W.D. La. Mar. 11, 2019). Neither party has briefed or disputed this element of the plain view doctrine, and the court is of the opinion that this element is satisfied.

### B. Inevitable Discovery Doctrine

Nonetheless, even if the plain view doctrine does not apply to the present case, and Detective Steele's search of Boren's vehicle was unlawful, the court is persuaded by application of the inevitable discovery doctrine.

The "inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source" — here Detective Steele's allegedly unlawful search of Boren's vehicle. *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (citing *Nix v. Williams*, 467 U.S. 431, 443–44 (1984)); *Salinas*, 543 F. App'x at 466 (internal footnote and citation omitted) ("[T]he exclusionary rule is inapplicable if the otherwise suppressible evidence would inevitably have been discovered by lawful means."). The inevitable discovery doctrine applies when the Government proves by a preponderance of the evidence that "(1) there is a reasonable probability that the contested evidence would have been discovered by lawful means

in the absence of police misconduct, and (2) the Government was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991) (citation omitted). This ensures that the prosecution's position remains *status quo* — that they are neither "put in a better position as a result of police illegality," nor "put in a worse position by police misconduct." *Id.* (citation omitted).

First, it is well-established that "[p]olice may make a warrantless inventory search of a legitimately seized car, as long as the inventory search is conducted according to established procedures of the searching police department." *United States v. Conlan*, 786 F.3d 380, 388–89 (5th Cir. 2015) (quoting *United States v. Cooper*, 949 F.2d 737, 747 (5th Cir. 1991)). Detective Steele testified that the OPD has a policy that any time an arrest is made, "if there's not someone else in the car that could care for the vehicle where it's potentially going to be towed, an inventory is completed. It's basically to protect the city, the officer, and the wrecker service in case someone has expensive items in their vehicle." Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 30:23–31:8. Detective Steele affirmed that this is the OPD's official policy. *Id.* at 31:19–20.

Thus, the court is convinced that the first element is satisfied: Detective Steele and other police agents conducted a lawful traffic stop and arrest of Boren when no one else was available to take possession of his vehicle. Accordingly, the OPD would have followed its policy of conducting an inventory search of Boren's vehicle according to the agency's established procedures. *Conlan*, 786 F.3d at 388–89. Boren has not argued why this would not have occurred in this case. Therefore, there is a "reasonable probability" that the OPD would have discovered the plastic bag containing methamphetamine residue in the partially open container, along with the four ounces of methamphetamine, regardless of the search conducted at the scene of Boren's arrest. *Lamas*, 930 F.2d at 1102. This satisfies the first element.

Moving to the second element, the Fifth Circuit has "suggested that the second element of the inevitable discovery rule may be superfluous." *Salinas*, 543 F. App'x at 467 (footnote and citation omitted); *United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010) (citation omitted) ("Indeed, we have indicated that the 'active-pursuit element' may no longer be necessary to invoke the inevitable discovery rule."). However, it "almost goes without saying that the government was actively pursuing a substantial alternate line of investigation" at the time Detective Steele arrested Boren, as evidenced by Steele's undercover surveillance of Boren, coupled with his stated intention of arresting him for traffic violations. Doc. No. 24, Jan. 19, 2023 Hr'g Tr. at 11:6–11:19, 13:21–14:19, 15:15–16:22. Accordingly, the second element is satisfied as well.

In sum, the plain view exception to the Fourth Amendment applies to this case. By peering through the inside of Boren's vehicle, Detective Steele could see drug paraphernalia inside the black case on the floorboard of Boren's car. Second, the incriminating nature of the plastic bag was immediately apparent, such that Steele had probable cause to believe that contraband or evidence of a crime was contained within it. This is largely due to the totality of the circumstances of the events before, during and after Boren's arrest. Lastly, Steele was authorized to access the case once he identified its contents in connection with the lawful stop and arrest of Boren. Nevertheless, even if the plain view doctrine is inapplicable, and Detective Steele conducted an unlawful search, the Orange Police Department's vehicle inventory policies heavily favor finding that the discovery of the plastic bag, and the four ounces of methamphetamine, were inevitable. Therefore, Defendant Charles Boren's *Motion to Suppress Evidence* (Doc. No. 20) should be denied.

### III. **Recommendation**

For the foregoing reasons, the undersigned recommends denying Defendant Charles Brett Boren's *Motion to Suppress Evidence* (Doc. No. 20).

### IV. **Objections**

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within **seven (7) days** after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2); E.D. TEX. CIV. R. CV-72(c). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this Report, within **seven (7) days** of being served with a copy of this Report, bars that party from: (1) entitlement to *de novo* review by the United States District Judge of the findings of fact and conclusions of law, and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge. *See Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 3rd day of February, 2023.

_____
Zack Hawthorn
United States Magistrate Judge